UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| ANTHONY DAVID MARTIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | CV419-340 |
| ANDREW SAUL, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Anthony David Martin seeks judicial review of the Social Security Administration's denial of his protectively filed application for a period of disability and disability insurance benefits (DIB).

## I. GOVERNING STANDARDS

In social security cases, courts

> . . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ applies

> . . . a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC[1] to perform [his] past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform [his] past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience. An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a [Vocational Expert (VE)].

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir. 2015) (footnote added).

---

[1] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to his past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

## II.   ANALYSIS

Martin, who was 40 to 43 years old during the relevant period, tr. 25, 196, alleges disability beginning on July 1, 2015, tr. 17.   He has a college education and past job experience as a police officer.   Tr. 25, 215.   After a hearing, tr. 36-94, the ALJ denied the application, tr. 17-27, 105, 124.   He found that Martin's traumatic brain injury/seizure disorder with headaches, lumbar spine degenerative disc disease, cervicalgia, right shoulder degenerative joint disease status/post decompression, depression, post-traumatic stress disorder, and obesity constituted severe impairments but did not meet or medically equal a Listing.   Tr. 19-20.   The ALJ thus found that Martin retained the RFC for light work except

> . . . [he can] push/pull up to 10 pounds occasionally. Stand/walk up to 6 of 8 hours and sit up to 6 of 8 hours with normal breaks. Occasionally stair and ramp climb, but no ladders or scaffolds. Frequently balance; occasionally stoop, kneel, crouch and crawl; occasionally overhead work and use of food controls; no unprotected heights and other hazards; work limited to simple, routine work; work involving simple, work related decisions with few, if any, workplace changes and occ. interaction with co-workers, supervision and public.

Tr. 21.   Plaintiff, he determined, could not perform his past relevant work but could perform the requirements of representative work such as

marker, attendant, and cleaner with an SVP of 2.[2]  Tr. 24-26.  Martin disagrees, arguing that the ALJ erred in his evaluation of the medical opinion evidence.  Docs. 20 & 24.

An ALJ is entitled to formulate an RFC and resolve any ambiguity or inconsistency in the medical evidence, 20 C.F.R. §§ 416.927(d)(2), 946(c), based on the entire record, 20 C.F.R. §§ 404.1520a (evaluation of mental impairments), 416.945(a)(3) (the RFC is based on all the relevant evidence, including diagnoses, treatment, observations, and opinions of medical sources, as well as witness testimony).  The RFC represents the most a claimant can do despite his limitations, SSR[3] 96-8p, and it is the ALJ's responsibility (and not any doctor's) to assess the RFC based on the record as a whole.  *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("the task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctor's."); *see* 20 C.F.R.

---

[2]  Specific Vocational Preparation (SVP) is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  Dictionary of Occupational Titles, App. C.

[3]  Social Security Rulings (SSR) "represent precedent final opinions and orders and statements of policy and interpretations that we have adopted."  20 C.F.R. § 402.35(b)(1). SSRs are entitled to deference, but are not binding on the courts.  *Fair v. Shalala*, 37 F.3d 1466, 1467 (11th Cir. 1994); *cf. Silveira v. Apfel*, 204 F.3d 1257, 1260 (9th Cir. 2000) ("This court defer[s] to Social Security Rulings . . . unless they are plainly erroneous or inconsistent with the Act or regulations").

§ 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); 20 C.F.R. § 404.1546(c) (the ALJ has the responsibility for determining a claimant's RFC). And the ALJ can distill a claimant's RFC from an amalgamation of the record as a whole, without requiring a specific medical opinion to articulate a specific functional limitation. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question" because "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record").

A.  **Medical Opinion Evidence**

Plaintiff argues that the ALJ erred in his evaluation of the opinions of treating physicians Dr. Elaine Feraru, a neurology specialist, and Dr. Tristan Svedy to the extent that Dr. Feraru's questionnaire is not accurately credited, who completed a Physical Residual Functional Capacity Questionnaire. Docs. 20 & 24. Plaintiff also asserts that the ALJ improperly discredited his disability rating from the VA

### 1. *Dr. Feraru*

Treating neurologist Dr. Feraru indicated that Martin had been diagnosed with a seizure disorder including tonic-clonic seizures and psychomotor epilepsy. Doc. 20 at 19. She also explained that continued medication was necessary for control of his condition, and that he suffered from generalized tonic-clonic convulsion, episodes of unconsciousness, brief interruption in consciousness or conscious control, episodes of staring, episodes of sudden jerking movements in his arms, trunk or head, episodes of abnormality of memory, episodes of abnormality of mood, episodes of sleep disturbance, and episodes of tremors. *Id.* at 19-20. She determined that Martin "can not work, can not drive, work with machinery, work at heights. Seizures frequent so he cannot perform gainful employment at this time." *Id.* at 20; Tr. 533-536. The ALJ did not discuss this questionnaire. The Government argues that "the ALJ did not commit harmful error in failing to discuss the seizure questionnaire completed by Dr. Feraru," because the "opinion that [p]laintiff could not work and could not perform gainful employment is not a medical opinion" and thus entitled to little weight and the

6

remainder of the opinion was consistent with the assessed RFC.  Doc. 23 at 11.

Contrary to the Government's position, the Commissioner did not commit harmless error in failing to consider the questionnaire filled out by Dr. Feraru.  In addition to determining that plaintiff could not work—which the Court assumes for purposes of the argument is a question reserved for the ALJ—Dr. Feraru also listed a number of abnormalities of memory, mood, speech, and tremors. Tr. 534.  She listed 0-4 seizures per week, tr. 534, and while she did acknowledge that the plaintiff could not work in heights or use machinery, she also noted he could not drive, something which was *not* included in the RFC, *id.* Setting this aside completely, the Eleventh Circuit makes it clear that an ALJ must evaluate opinion evidence from plaintiff's medical consultants and must determine the weight given to those opinions.  Sr 96-2p.  And it is reversible error to "provide[] no explanation for the weight, or lack thereof, that he assigned to those opinions." *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830 (11th Cir. June 22, 2011) *see also Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (determining that substantial evidence not discernable in the absence of explanation).

Nor does the Court assume, as the Government urges, that the ALJ would have made the same determination he did had he considered the questionnaire. *Sprinkel v. Berryhill*, 2017 WL 4172501 at *6 (S.D. Ga. Aug. 28, 2017) ("the Court cannot now engage in an administrative review that was not done in the first instance at the administrative level, but rather must examine the administrative decision as delivered."). Notably, restrictions on driving motorized vehicles are included in RFC's *in addition* to using machinery. *See, e.g., Veal v.* Berryhill, 218 WL 3120029, *2 (N.D. Fla. June 11, 2018) (noting restrictions including hazardous machinery and driving motorized vehicles). Thus, it is unclear whether this was indeed harmless error as what occurred was the "broad rejection of the medical opinion," rather than merely not crediting all portions of the opinion. *See Edgecomb v. Commissioner of Soc. Sec.*, ___ F. App'x ___, 2020 WL 7774948 (11th Cir. Dec. 30, 2020) (noting that an ALJ commits reversible error by broadly rejecting a medical opinion). Likewise, as the plaintiff notes, the ALJ discredited other opinion evidence of plaintiff's treating physician Dr. Svedy as being inconsistent with the record, when it *was* consistent with the questionnaire completed by Dr. Feraru. Tr. 818-822 (agreeing that

8

plaintiff cannot drive, climb or work). Thus, to the extent that the lack of consideration of Dr. Feraru's opinions caused the ALJ to improperly discredit other opinion evidence, it must be reconsidered. The Commissioner must evaluate Dr. Feraru's questionnaire on remand to determine whether plaintiff can work.

2. *VA Disability Rating*

Plaintiff also argues that the ALJ erred in giving his VA disability rating of 100% only partial weight. Doc. 20 at 24. Although the regulations provide that a disability determination by another agency is not binding on the Social Security Administration, 20 C.F.R. §§ 404.1504, 416.904, the Eleventh Circuit has made it clear that a VA disability rating "is evidence that should be considered and is entitled to great weight." *Kemp v. Astrue,* 308 F. App'x, 423, 426 (11th Cir. 2009); *Brady v. Heckler,* 724 F.2d 914, 921 (11th Cir. 1984).[4] An ALJ is not required,

---

[4] The standards for VA disability are similar to, but not interchangeable with, those for Social Security (SSA) disability. *Compare* 38 C.F.R. § 4.1 *et seq.* (VA ratings) *with* 20 C.F.R. § 404.1 *et seq.* ([SSA] Disability); *see also* SSR 06-03p (the different standards and rules applied by other governmental agencies "may limit the relevance of a determination of disability made by another agency"). The "substantial difference between the criteria" used in social security and veteran's disability determinations is that the VA "requires less proof of disability than the Social Security Administration does." *Allord v. Barnhart,* 455 F.3d 818, 820 (7th Cir. 2006). *See also Gyurko v. Harris,* 487 F. Supp. 1121, 1130 (D. Conn. 1980) ("the VA's ultimate determination [is] based on a less stringent test of 'disability' than the one guiding the ALJ"); *Tietze v. Richardson,* 342 F. Supp. 610, 614 (S.D. Tex. 1972) (the

however, it state the precise amount of weight given to the VA's disability determination so long as the record shows he expressly considered and

---

VA and SSA "have different concepts of disability, different eligibility requirements and are intended to accomplish different purposes"); 38 U.S.C. § 5107 (the VA "give[s] the benefit of the doubt to the claimant" whenever "there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter").

The SSA disability determination is based on a five-step sequential process, where the Commissioner is required to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) is *per se* disabled by an impairment, or can (4) return to his past relevant work or (5) perform other jobs despite the limitations imposed by his impairment(s). 20 C.F.R. §§ 404.1520, 416.920. The VA does not follow this process. *See* 38 C.F.R. § 4.1 *et seq*. The VA instead applies a "schedule" of ratings for disabilities, where claimants are assigned a certain disability percentage for each impairment and the total disability is then scaled to calculate a disability "rating." 38 C.F.R. §§ 4.15, 4.71a. The Commissioner does not assign a "percent" disability rating at all. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Under the VA regulations, a claimant is considered objectively disabled if he has an impairment that would render it "impossible for the average person" to obtain a substantially gainful occupation, regardless of whether the individual claimant could overcome the handicap of disability. 38 C.F.R. § 4.15. In contrast, the Commissioner does not analyze the effect of the impairment on an "average" person– only the particular claimant. 20 C.F.R. §§ 404.1520, 404.1560. And, while both the VA and the Commissioner employ the terms "substantial" and "gainful" in describing the type of work that a claimant can or cannot perform, the definitions of these terms differ. Under the VA definition, a "substantially gainful occupation" is one that is "ordinarily followed by the nondisabled to earn their livelihood with earnings common to the particular occupation in the community where the veteran resides." *Pike v. Brown*, 8 Vet. App. 497 (1995); *Beaty v. Brown*, 6 Vet. App. 532, 538 (Vet. App. 1994) (also noting "substantially gainful employment suggests 'a living wage'"). Under the Commissioner's definition, "substantial gainful activity" is "work activity involving significant physical or mental activities" that is also "for pay or profit," 20 C.F.R. § 404.1572(a), (b). The definitions of available work differ as well, with the VA limited to occupations within the "community where [the claimant] resides," *Beaty*, 6 Vet. App. at 538, while the Commissioner must only identify potential work existing in "significant numbers" in the national economy to find a claimant not disabled. 20 C.F.R. § 404.1560(c)(1), (2).

10

closely scrutinized it.  *Ostborg v. Comm'r of Soc. Sec.*, 610 F. App'x 907, 914 (11th Cir. 2015); *Kemp*, 308 F. App'x at 426, *Adams v. Comm'r of Soc. Sec.*, 542 F. App'x 854, 856-57 (11th Cir. 2013).  However, "if an ALJ rejects a VA rating or gives a VA rating less than considerable weight, he must provide sufficient justification for doing so."  *Jones v. Colvin*, 2015 WL 2127483, * 3 (S.D. Ga. May 6, 2015) (citing *Hogard v. Sullivan*, 733 F. Supp. 1465, 1468 (M.D. Fla. 1990); *Pearson v. Atrue,* 271 F. App'x 979, 981 (11th Cir. 2008); *Monigan v. Colvin*, 2014 WL 5323099, at * 8 (S.D. Ala. Oct. 17, 2014)).

Here the ALJ expressly addressed the VA impairment rating, but noted that he was only giving it partial weight because "it does not provide for specific limitations and [is] inconsistent with work activities and college classes since the alleged onset date."  Tr. 25.  The ALJ was specifically referencing plaintiff's statements that he was taking classes, received a college degree in 2017, and was still attending online school at the time of the hearing.  TR. 45-46.  Plaintiff also asserted that he did some brief work at a fireworks store.  Tr. 25, 49.  Thus the ALJ sufficiently justified his decision to reject the VA disability rating by analyzing the evidence of the record related to the rating.  The Court

11

will not overturn this determination.

### III.  CONCLUSION

In conclusion, the ALJ's improperly discredited medical opinion evidence within the record and a remand is warranted to properly incorporate those findings into the RFC.  For the reasons set forth above, this action should be **REMANDED** to the Social Security Administration for further proceedings under 42 U.S.C. § 405(g).

This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Therefore, **within 14 days from the date of this order**, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are

advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this <u>4th</u> day of February, 2021.

*/s/ Christopher L. Ray*
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA